IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 23-1167

ZURICH AMERICAN INSURANCE COMPANY,
Plaintiff-Appellee

v.

MEDICAL PROPERTIES TRUST, INC.,
Defendant-Appellant

No. 23-1180

STEWARD HEALTH CARE SYSTEM, LLC,
Plaintiff-Appellant

v.

AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY
and ZURICH AMERICAN INSURANCE COMPANY,
Defendants-Appellees

On Appeal from an Order of the United States District Court
for the District of Massachusetts, Hon. Patti B. Saris

**SUPPLEMENTAL BRIEF OF APPELLEES IN RESPONSE TO *AMICUS CURIAE* BRIEF OF UNITED POLICYHOLDERS**

Patrick F. Hofer (# 1199731)
Clyde & Co US LLP
1775 Pennsylvania Avenue, N.W., Suite 400
Washington, D.C. 20006
Tel: (202) 747-5110
patrick.hofer@clydeco.us

# CORPORATE DISCLOSURE STATEMENT OF APPELLEE ZURICH AMERICAN INSURANCE COMPANY

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned counsel for Plaintiff-Appellee Zurich American Insurance Company provides the following Corporate Disclosure Statement:

Zurich American Insurance Company is a wholly owned subsidiary of Zurich Holding Company of America, Inc., a Delaware corporation. Zurich Holding Company of America, Inc. is wholly owned by Zurich Insurance Company Ltd, a Swiss corporation. Zurich Insurance Company Ltd is directly owned by Zurich Insurance Group Ltd, a Swiss corporation. Zurich Insurance Group Ltd is the only publicly traded parent company, with a listing on the Swiss stock exchange, and a further trading of American Depositary Receipts.

# CORPORATE DISCLOSURE STATEMENT OF APPELLEE AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellee American Guarantee and Liability Insurance Company makes the following disclosures:

American Guarantee and Liability Insurance Company is a wholly owned subsidiary of Zurich American Insurance Company, a New York corporation. Zurich American Insurance Company is a wholly owned subsidiary of Zurich Holding Company of America, Inc., a Delaware corporation. Zurich Holding Company of America, Inc. is wholly owned by Zurich Insurance Company Ltd, a Swiss corporation. Zurich Insurance Company Ltd is directly owned by Zurich Insurance Group Ltd, a Swiss corporation. Zurich Insurance Group Ltd is the only publicly traded parent company, with a listing on the Swiss stock exchange, and a further trading of American Depositary Receipts.

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................1

II.  ARGUMENT................................................................................................2

      A.   UP's Brief Provides No Meaningful Context Because the Zurich Policy Is an All-Risks Commercial Property Policy Not Subject to the National Flood Insurance Program's Requirements .............................2

      B.   Beyond Providing Sublimits According to Certain Flood Zones, the Zurich Policy Contains Substantially Different Provisions for Flood Coverage than a Policy Under the NFIP ..................................................6

      C.   Zurich's Interpretation Is Consistent with This Circuit's Precedent and Does Not Upend a Reasonable Insured's Expectations ........................8

III. CONCLUSION ..........................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Atlas Pallet, Inc. v. Gallagher*,
   725 F.2d 131 (1st Cir. 1984) .................................................................. 4

*Connecticut Indem. Co. v. Lee*,
   74 F. Supp. 353 (D. Mass. 1947), *aff'd*, 168 F.2d 420 (1st Cir.
   1948) ........................................................................................................ 8

*Downey v. State Farm Fire & Cas. Co.*,
   266 F.3d 675 (7th Cir. 2001) .................................................................. 3

*Fidelity Coop. Bank v. Nova Cas. Co.*,
   726 F.3d 31 (1st Cir. 2013) ............................................................. 1, 8, 9

*Lorando v. Gethro*,
   228 Mass. 181, 117 N.E. 185 (1917) ..................................................... 8

*McGair v. American Bankers Ins. Co. of Fla.*,
   693 F.3d 94 (1st Cir. 2012) .................................................................... 3

**Other Authorities**

FEMA, Rate Explanation Guide, *available at*
   https://agents.floodsmart.gov/sites/default/files/fema-risk-rating-
   rate-explanation-guide.pdf ..................................................................... 2

Rebecca Williams *et al.,* "Flood Insurance Redesigned: Regulatory
   Considerations for a Viable and Sustainable Private Market,"
   Journal of Insurance Regulation, *available at*
   https://content.naic.org/sites/default/files/cipr-jir-2023-1.pdf ............... 4

Standard Flood Insurance Policy, Dwelling Form, at 1 (Oct. 2015),
   *available at* https://www.fema.gov/sites/default/files/2020-05/F-122_Dwelling_
   SFIP_102015.pdf ................................................................................... 7

Zurich Insurance Group, "The Threat From Above: Pluvial Flooding" (July 22, 2020), *available at* https://www.zurich.com/en/knowledge/topics/flood-and-water-damage/the-threat-from-above ..................... 5

I.      **INTRODUCTION**

United Policyholders' ("UP") amicus brief purports to offer three arguments in support of Medical Properties Trust, Inc. ("MPT"), arguing that Zurich American Insurance Company's ("Zurich") interpretation of "surface waters" is at odds with (1) the way the insurance industry rates flood risk; (2) the terms of the Zurich policy; and (3) policyholders' reasonable expectations. The underlying contention of UP's brief, however, is merely that insurers generally do not consider the type of roof of a building when pricing for flood coverage, so "surface waters" should not be interpreted to include water that has collected on a roof. UP's brief fails to establish the premise of its argument or to connect it to this case. In addition, UP fails to demonstrate how the market for flood insurance would be adversely impacted by a decision in this case, given that the interpretation of "surface waters" to which UP objects was rendered by this Circuit, following Massachusetts law, ten years ago in *Fidelity Co-operative Bank v. Nova Casualty Co.*, 726 F.3d 31 (1st Cir. 2013). Its brief merely offers general statements that provide no insight into the market for private flood insurance and asserts, without foundation, that MPT, and all policyholders by extension, reasonably expected more than $100 million for the type of flood suffered by the Norwood Hospital. Its misplaced arguments should not affect this Court's interpretation of the plain

1

meaning of "surface waters" as used in the policy Zurich issued to MPT (the "Zurich Policy").

## II. ARGUMENT

### A. UP's Brief Provides No Meaningful Context Because the Zurich Policy Is an All-Risks Commercial Property Policy Not Subject to the National Flood Insurance Program's Requirements

In detailing the development of the National Flood Insurance Program ("NFIP"), which was created largely due to private insurers' recognition of the "catastrophic nature of flooding," UP attempts to establish that the NFIP's and Federal Emergency Management Agency's ("FEMA") use of Flood Insurance Rate Maps ("FIRMs") and building characteristics to assess flood risks to refute Zurich's argument that "surface waters" can gather on a property's roof. UP Br. at 3-7. The heart of its argument, however, is that the FEMA "Rate Explanation Guide" does not explicitly identify a building's roof as a characteristic determining flood risk. *Id*. at 5-6 (citing FEMA, Rate Explanation Guide, *available at* https://agents.floodsmart.gov/sites/default/files/fema-risk-rating-rate-explanation-guide.pdf). It also asserts that certain Zurich webpages identify common types of "surface water floods" as occurring at ground level. Thus, it argues that Zurich's position that "surface waters" include pooled water on a roof must not be correct. *Id*. at 6-7.

All of UP's arguments are misplaced. First, it is undisputed that the Zurich Policy at issue here is *not* a NFIP policy. Here, Zurich is acting as an insurer providing flood insurance through an all-risks commercial property insurance policy in the private marketplace (i.e., not through the NFIP), in a policy which includes coverage for, and the assessment of, a wide variety of risks other than flood. *See* [A579-89]. While UP's brief focuses on the NFIP and use of FIRMs, it fails to mention that "FEMA promulgated regulations prescribing the terms of the Standard Flood Insurance Policy ('SFIP') to be used by" private insurance companies to issue policies as part of the NFIP "Write-Your-Own program" ("WYOP"). *McGair v. American Bankers Ins. Co. of Fla.*, 693 F.3d 94, 96 (1st Cir. 2012). But as a private commercial property policy, the Zurich Policy is not an SFIP and not subject to the FEMA regulations. This matters because

> FEMA provides a standard text for all NFIP policies and forbids WYOP companies from making changes; FEMA's interpretations of the policy bind all WYOP participants; FEMA decides what rates may be charged; all premiums are remitted on to FEMA (minus a small fee); if WYOP companies pay out on a claim they get reimbursed by FEMA….

*Id*. (quoting *Downey v. State Farm Fire & Cas. Co.,* 266 F.3d 675, 679 (7th Cir.2001)). UP's discussion regarding the NFIP is therefore irrelevant because the same rules regarding rates, the policy language at issue, and the regulatory interpretations of that language do not apply to the Zurich Policy. Thus, it does not follow that the use of maps developed by FEMA to help assess the risk of flooding

3

means Zurich assesses risk in the same way as an insurer participating in the NFIP or that Zurich is somehow restricted by FEMA rate considerations when assessing risk.

Indeed, UP recognizes the District Court's decision turned on existing First Circuit precedent interpreting Massachusetts law. UP Br. at 1. But "[i]t is settled that *federal* law controls disputes over the coverage of insurance policies issued pursuant to the [NFIP]." *Atlas Pallet, Inc. v. Gallagher*, 725 F.2d 131, 135 (1st Cir. 1984) (emphasis added). "[N]either the statutory nor decisional law of any particular state is applicable" to cases involving policies issued pursuant to NFIP. *Id.* Thus, not only is the Zurich Policy at issue not subject to the NFIP, it is not subject to federal law interpretations of purportedly similar policy language.

To the contrary, the Zurich Policy is an all-risks commercial property policy covering the insureds' property in Massachusetts. The Court should not presume under these circumstances, as UP suggests, that plainly inapplicable regulations and case law drove the rate assessment of the Zurich Policy. Indeed, in assessing premium for an all-risks policy, insurers naturally take into account factors beyond those identified in FEMA's rate guide. And as one of UP's sources acknowledges, "The goals of the NFIP do not align with the goals of private insurers." Rebecca Williams *et al.,* "Flood Insurance Redesigned: Regulatory Considerations for a Viable and Sustainable Private Market," Journal of Insurance Regulation, *available*

4

*at* https://content.naic.org/sites/default/files/cipr-jir-2023-1.pdf. Thus, while there may be overlapping factors considered by FEMA and private insurers to assess flood risk, UP's argument that defining "surface waters" to include rainwater accumulating water on a surface more than a story above ground is inconsistent with the development of flood insurance, in the context of the NFIP regulation, imposes a plainly inapplicable standard on the Zurich Policy.

The fact that a Zurich webpage recognizes various common types of flood does nothing to limit the definition of "Flood" in Zurich Policy. [A584]. The Zurich webpage discusses pluvial flooding—flooding due to extreme rainfall events, not overflows from a river or lake. But as it notes, pluvial flooding can occur anywhere, such that flood maps and models are not useful to assess it, fully refuting UP's argument that such maps or models are relevant here.[1] The fact that the flood here occurred due to gathering of water from an abnormally strong rainstorm only further undermines the usefulness of reading FEMA requirements into the Zurich Policy's definition—a severe rainstorm can occur regardless of

---

[1] In the same Zurich webpage relied on by UP, the article opens: "Seen by many as an invisible hazard, pluvial floods can often strike with little warning in areas *with no recent record of flooding*. A common misconception about flood is that you must be located near a body of water to be at risk." Zurich Insurance Group, "The Threat From Above: Pluvial Flooding" (July 22, 2020), *available at* https://www.zurich.com/en/knowledge/topics/flood-and-water-damage/the-threat-from-above (emphasis added).

5

where a property falls on a FIRM. While common types of floods can impact flood-risk rating, that has no impact on whether the surface waters on the Norwood Hospital's roof, consistent with established Massachusetts law, constitute a "Flood" under the terms of the Zurich Policy.

### B. Beyond Providing Sublimits According to Certain Flood Zones, the Zurich Policy Contains Substantially Different Provisions for Flood Coverage than a Policy Under the NFIP

UP's argument regarding the interpretation of the Zurich Policy also provides zero insight into the Policy's meaning. Its argument boils down to the broad assertions that it "makes sense" that "Zurich would naturally limit its coverage obligations with respect to" properties in Special Flood Hazard Areas, as compared to Moderate Flood Hazard Areas, and "[i]t is also natural for Zurich to consider federal flood-risk ratings in making its own risk assessments," which do not mention roof type. UP Br. at 7-8. These speculative suppositions are not supported by evidence, but they also fail to acknowledge a key difference between the Zurich Policy and the FEMA-regulated SFIPs to which it is implicitly being compared: The Zurich Policy provides *broader* coverage for "Flood" under its plain terms than an SFIP does.

The Zurich Policy includes coverage for loss due to "Flood," providing that Zurich "will pay for direct physical loss of or damage to Covered Property, Time Element loss and Special Coverages loss as provided by this Policy, if such loss or

6

damage is caused by Flood regardless of any other cause or event contributing concurrently or in any other sequence of loss." [A618]. "Flood" is defined as:

> 7.23. A general and temporary condition of partial or complete inundation of normally dry land areas or structure(s) caused by:
>
> 7.23.01. The unusual and rapid accumulation or runoff of surface waters, waves, tides, tidal waves, tsunami, the release of water, the rising, overflowing or breaking of boundaries of nature or man-made bodies of water; or the spray there from all whether driven by wind or not; . . . .
>
> 7.23.02. Mudflow or mudslides caused by accumulation of water on or under the ground.
>
> 7.23.03. Flood also includes the backup of water from a sewer, drain or sump caused in whole or part by Flood.

[A634]. In an SFIP:

> Flood, as used in this flood insurance policy, means:
>
> (a) A general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties (one of which is your property) from:
>
> > (1) Overflow of inland or tidal waters.
> >
> > (2) Unusual and rapid accumulation or runoff of surface waters from any source.
> >
> > (3) Mudflow

Standard Flood Insurance Policy, Dwelling Form, at 1 (Oct. 2015), *available at* https://www.fema.gov/sites/default/files/2020-05/F-122_Dwelling_SFIP_102015.pdf.

As is plain in comparing the definitions, the Zurich Policy expressly includes "structures" as capable of being inundated in the first instance, identifies

7

and differentiates many additional sources of potential "unusual and rapid accumulation of" water, and "includes the backup of water from a sewer, drain or sump caused in whole or part by **Flood**." [A634]. In other words, Zurich agreed to provide coverage for more types of flood, but given the "catastrophic nature" of the potential damage, naturally limited them to an annual aggregate sublimit (here, $100 million). UP's implicit attempt to equate the policy underwriting of a SFIP to the broad all-risks coverage of the Zurich Policy only underscores that the Zurich Policy intentionally contains coverage terms different from the policies regulated by FEMA, contrary to the premise upon which UP's entire brief relies.

    **C.    Zurich's Interpretation Is Consistent with This Circuit's Precedent and Does Not Upend a Reasonable Insured's Expectations**

UP's final argument is merely a poorly developed version of an argument already made by MPT, namely that a reasonable insured would not expect "surface waters" to include water pooled on a building's roof. MPT Br. at 8-10. As Zurich and American Guarantee and Liability Insurance Company ("AGLIC") explain in their combined Appellees' Brief, MPT's, and now UP's, interpretation of "surface waters" is unreasonable under Massachusetts law, especially in light of this Circuit's decision a decade ago in *Nova*. *See Connecticut Indem. Co. v. Lee*, 74 F. Supp. 353, 359 (D. Mass. 1947), *aff'd*, 168 F.2d 420 (1st Cir. 1948) ("[T]he parties to a contract are presumed to have known the law and to have known the law and

8

to have contracted in accordance therewith….") (citing *Lorando v. Gethro*, 228 Mass. 181, 187, 117 N.E. 185, 188 (1917)).

As an amicus, UP provides no argument of value to the Court. Without explanation, UP simply asserts that a "reasonable policyholder" would read the definition of "Flood" not to include water on a building's roof, even though this Court came to the exact opposite conclusion in *Nova*. UP Br. at 9. Moreover, again without explanation, UP asserts that limiting coverage here would undermine the coverage MPT "bought and paid for," which is "unacceptable, especially in light of the increasing proliferation of private flood insurance." UP Br. at 9. UP's brief simply attempts to inject consideration of irrelevant factors into determining the meaning of the Zurich Policy's language, but it ultimately fails to connect the dots. Zurich's position is consistent with the established law of this Circuit. Whether insureds choose to seek additional coverage (beyond the $100 million for MPT) or, on the other hand, risk going without any "surface waters" coverage by including an exclusion in the policy are decisions that can be made with eyes wide open. Following this Circuit's well-established precedent, which adhered to analogous state case law, will not have the impact on the private flood insurance market or real estate values that UP vaguely threatens. Zurich and AGLIC have each agreed to cover catastrophic losses suffered due to flood at the Norwood Hospital, but only for up to the amounts agreed.

## III. CONCLUSION

For the reasons set forth above, the Court may disregard UP's amicus brief in analyzing this interlocutory appeal. Zurich and AGLIC respectfully request that this Court affirm the District Court's decision for the reasons set forth in their combined Appellees' Brief.

Dated: August 7, 2023                            Respectfully submitted,


                                                 */s/ Patrick F. Hofer*
                                                 Patrick F. Hofer (# 1199731)
                                                 Clyde & Co US LLP
                                                 1775 Pennsylvania Avenue, N.W., Suite 400
                                                 Washington, D.C. 20006
                                                 Tel: (202) 747-5110
                                                 patrick.hofer@clydeco.us

                                                 *Attorney for Appellees Zurich American*
                                                 *Insurance Company and American*
                                                 *Guarantee and Liability Insurance Company*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify that this brief complies with the type-volume limitations set forth in Fed. R. App. P. 32(a)(7)(B). Counting all words but excluding the parts of this brief exempted by Fed. R. App. P. 32(f), this brief contains 2,196 words.

I further certify that this brief complies with the typeface requirements of Fed R. App. P. 32(a)(5)-(6), because this document has been prepared in a proportionally spaced 14-point Times New Roman font.

*/s/ Patrick F. Hofer*
Patrick F. Hofer (# 1199731)

## **CERTIFICATE OF SERVICE**

I, Patrick F. Hofer, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants by mail and/or email on August 7, 2023, at the addresses listed below.

> David D. Disiere
> Martin, Disiere, Jefferson & Wisdom
> 808 Travis, Suite 1100
> Houston, TX 77002
> disiere@mdjwlaw.com

*/s/ Patrick F. Hofer*
Patrick F. Hofer (# 1199731)