IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 23-1167

ZURICH AMERICAN INSURANCE COMPANY,
Plaintiff-Appellee

v.

MEDICAL PROPERTIES TRUST, INC.,
Defendant-Appellant

No. 23-1180

STEWARD HEALTH CARE SYSTEM, LLC,
Plaintiff-Appellant

v.

AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY;
ZURICH AMERICAN INSURANCE COMPANY,
Defendants-Appellees

On Appeal from an Order of the United States District Court
for the District of Massachusetts, Hon. Patti B. Saris

**REPLY BRIEF OF APPELLANT MEDICAL PROPERTIES TRUST, INC.**

Martin C. Pentz (BBO # 394050)
Creighton K. Page (BBO # 674640)
Laura D. Gradel (BBO # 692315)
Natalie F. Panariello (BBO # 707579)
Foley Hoag LLP
Seaport West, 155 Seaport Boulevard
Boston, Massachusetts 02210-2600
Telephone:  617 832 1000
mpentz@foleyhoag.com
cpage@foleyhoag.com
npanariello@foleyhoag.com

Dale Jefferson (*pro hac vice*)
Martin, Disiere, Jefferson &
Wisdom
808 Travis, Suite 1100
Houston, TX 77002
Telephone: 713 632 1717
jefferson@mdjwlaw.com

Dated: September 21, 2023

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................... iii

ARGUMENT ............................................................................................... 1

I.    The *Nova* Court's "Surface Water" Coverage Determinations
      Under that Policy's Flood Endorsement Were Obiter Dicta,
      Distinguishable, and Created No Binding Precedent for This
      Case ................................................................................................... 1

      A.    The Judgment in *Nova* Did Not Rest Upon Any
            Determination Regarding "Surface Water" Coverage
            Under the Flood Endorsement ................................................... 2

      B.    *Nova* Is Distinguishable Because the Coverage
            Questions Presented in that Case Were Fundamentally
            Different than the Questions Presented Here ............................ 8

II.   Nothing in the SJC's *Boazova* or *Surabian* Decisions Suggests
      the SJC Would Extend Its Definition of "Surface Water" to
      Include Rainwater Landing Directly on a Rooftop Without Ever
      Lying, Flowing or Spreading on the Surface of the Earth or
      Ground .............................................................................................. 12

      A.    *Boazova* and the Cases Cited Therein Do Not Support
            Zurich's Attempt to Read Out of the SJC's Definition
            the Requirement that "Surface Waters" Be on the
            "Surface of the Earth" or "Ground" ...................................... 13

      B.    Rainwater Landing Directly on the Hospital's Roof Is
            Not "Surface Water" Because It Never "Naturally
            Spread Over the Ground" in a Diffused State Before
            Inundating the Roof ................................................................. 18

      C.    *Boazova* and *Surabian* Did Not Hold That "Surface
            Waters" Is Unambiguous as Applied to the Facts
            Presented Here ......................................................................... 21

i

III.    The Term "Surface Waters" – as Used in the Policy and
        Applied to the Facts Here – Is, at Best for Zurich, Ambiguous
        and Must Be Construed in MPT's Favor ........................................... 22

        A.    Dictionary Definitions and Case Law in Other
              Jurisdictions Do Not Support Zurich's Expansive
              Interpretation of "Surface Water" ........................................... 23

        B.    Clues from the Rest of the Policy Wording Also
              Support the Reasonableness of MPT's Understanding of
              "Surface Waters" ..................................................................... 24

IV.     In the Alternative, This Court Should Certify to the SJC the
        Correctness of the District Court's Ruling ........................................ 27

CONCLUSION ............................................................................................ 28

CERTIFICATE OF COMPLIANCE ............................................................ 30

# TABLE OF AUTHORITIES

**Cases**

*Arcam Pharm. Corp. v. Faria*,
    513 F.3d 1 (1st Cir. 2007)..................................................2, 5

*Boazova v. Safety Ins. Co.*,
    462 Mass. 346, 968 N.E.2d 385 (Mass. 2012) ............*passim*

*Bringhurst v. O'Donnell*,
    14 Del. Ch. 225, 124 A. 795 (1924) ....................................14

*Cameron v. USAA Prop. & Cas. Ins. Co.*,
    733 A.2d 965 (D.C. 1999) ................................14, 15, 16, 19

*Capital Mortg. Sols., LLC v. Cin. Ins. Co.*,
    No. 21-cv-10873, 2023 U.S. Dist. LEXIS 90913 (E.D. Mich.
    May 24, 2023)......................................................................19

*Cochran v. Travelers Ins. Co.*,
    606 So.2d 22 (La. Ct. App. 1992) .......................................14

*Crocker v. American Nat'l Gen. Ins. Co.*,
    211 S.W.3d 928 (Tex. Ct. App. 2007)....................14, 15, 17

*Dorchester Mut. Ins. Co. v. Krusell*,
    485 Mass. 431, 150 N.E.3d 731 (2020)........................22, 24

*Fidelity Cooperative Bank v. Nova Casualty Co.*,
    726 F.3d 31 (1st Cir. 2013)...........................................*passim*

*Hakim v. Mass. Insurers' Insolvency Fund*,
    424 Mass. 275, 675 N.E.2d 1161 (1997)...............................9

*Louisiana Mid-Continental Oil & Gas Ass'n v. Peerless Ins.
    Co.*,
    No. CV 17-01098-BAJ-EWD, 2019 U.S. Dist. LEXIS
    45648 (M.D. La. Mar. 19, 2019) .........................................14

*Massachusetts v. United States*,
    333 U.S. 611 (1948).....................................................2, 3, 6

*PTC, Inc. v. Charter Oak Fire Ins. Co.*,
   123 F. Supp. 3d 206 (D. Mass. 2015)..................................26

*Sherwood Real Estate and Inv. Co. v. Old Colony Ins. Co.*,
   234 So.2d 445 (La. Ct. App. 1970) .....................................14

*Smith v. Union Auto Indem. Co.*,
   323 Ill. App. 3d 741, 752 N.E.2d 1261 (Ill. App. Ct. 2001)19

*Surabian Realty Co.v. NGM Ins. Co.*,
   462 Mass. 715, 971 N.E.2d 268 (2012).......................*passim*

*Union Pac. R. Co. v. Mason City & Ft. D.R. Co.*,
   199 U.S. 160 (1905)......................................................2, 3, 6

*Union Street Furniture and Carpet, Inc. v. Peerless Indemnity
   Ins. Co.*,
   No. FSTCV085008699S, 2012 Conn. Super. LEXIS 2635
   (Conn. Super. Ct. Oct. 23, 2012) ..................................15, 17

*Vermont Mut. Ins. Co. v. Zamsky*,
   732 F.3d 37 (1st Cir. 2013)..................................................26

**Statutes**

28 U.S.C. § 1292(b) ..................................................................28

**Rules**

SJC Rule 1:03 ..........................................................................28

**Other Authorities**

https://www.wsj.com/personal-finance/americans-are-bailing-
   on-their-home-insurance-e3395515.....................................27

MPT respectfully submits this reply brief in response to Zurich's Appellee's Brief and in further support of MPT's position in this interlocutory appeal.

## ARGUMENT

I.    **The *Nova* Court's "Surface Water" Coverage Determinations Under that Policy's Flood Endorsement Were Obiter Dicta, Distinguishable, and Created No Binding Precedent for This Case**

The Court's treatment of the "surface water" coverage issue presented in *Fidelity Cooperative Bank v. Nova Casualty Co.*, 726 F.3d 31 (1st Cir. 2013) had no impact on the outcome of that case.  As Zurich emphasizes in its Appellee's Brief (pp. 18, 24, n.3), if the judgment in *Nova* had depended on a finding that Fidelity's damage was caused by "surface water" that was covered under the Flood Endorsement, Fidelity's coverage would have been reduced by the $25,000 Flood deductible.  But the *Nova* Court "most forcefully conclude[d]" that Fidelity was entitled to full coverage under other policy provisions without any deductible. *Nova*, 726 F.3d at 39, n.2.  As such, any "surface water" coverage determination was both insufficient and unnecessary to support the judgment in Fidelity's favor (i.e., full coverage with no deductible).  Section I.A, *infra*.  Moreover, nothing in the *Nova* opinion even remotely suggests that the only reasonable interpretation of the SJC's definition of "surface water" is that it includes rainwater on a roof that

1

never lies, flows or spreads on the surface of the earth or the ground, which is

what Zurich must prove here.  Section I.B, *infra*.

> **A.    The Judgment in *Nova* Did Not Rest Upon Any
> Determination Regarding "Surface Water" Coverage
> Under the Flood Endorsement**

At pages 26-29 of its brief, Zurich cites *Arcam Pharm. Corp. v. Faria*,

513 F.3d 1, 3 (1st Cir. 2007) for the proposition that dictum is "superfluous

content" which is not "essential to the result reached in the case."  Zurich also

cites two Supreme Court decisions for the proposition that alternative

holdings in a decision are not dicta when "the judgment rested as much upon

the one determination as the other."  *Id*. at 27-28 (quoting *Massachusetts v.

United States*, 333 U.S. 611, 622-23 (1948) and *Union Pac. R. Co. v. Mason

City & Ft. D.R. Co.,* 199 U.S. 160, 166 (1905)).  MPT agrees with these

statements of the law regarding what constitutes dicta and what portions of an

opinion create binding precedent, but these legal rules support MPT's position

regarding the significance of *Nova*, not Zurich's.

In *Nova*, the judgment – or the "result reached in the case" – was an

order that all of Fidelity's losses were covered under the policy's Habitational

Program Endorsement and its grant of coverage for damage caused by drain

overflow, which was not subject to any deductible.  As the *Nova* Court

explained (*Nova*, 726 F.3d at 39, n.2 and n.3), and as Zurich emphasizes in its

Appellee's Brief (pp. 18, 24, n.3), if Fidelity's right to recover under the policy
had depended on the Flood Endorsement and its grant of coverage for losses
caused by "surface waters," the $25,000 Flood Deductible would have
reduced Fidelity's recovery. But the *Nova* Court held that the deductible did
not apply. *Nova*, 726 F.3d at 37, n.2. That fact, by itself, demonstrates that
the *Nova* Court's judgment rested solely and exclusively on the Habitational
Program Endorsement, not on Fidelity's alternative argument for "surface
water" coverage under the Flood Endorsement.

Zurich makes much of the fact that Fidelity's alternative argument for
"surface water" coverage under the Flood Endorsement was one of its two
"Issues Presented" on appeal. Zurich Brief at 28-29. And it is true that the
Court's opinion addressed that alternative argument. *Nova*, 726 F.3d at 40-
41. But this is not enough to make that portion of the opinion part of the
"holding" and binding precedent, as Zurich contends. The cases Zurich cites
do not support that proposition; rather, they hold only that a decision of the
Court is not dictum if it is (1) necessary to the judgment, and (2) sufficient,
by itself, to sustain the judgment. *See Massachusetts*, 333 U.S. at 622-23;
*Union Pac.,* 199 U.S. at 166. In *Nova*, however, the answer to Fidelity's
alternative "surface water" coverage question was neither necessary nor
sufficient to sustain the Court's judgment, i.e., the actual result in the case.

3

This makes that portion of the *Nova* opinion obiter dicta, under Zurich's own authorities.

The *Nova* Court's alternative "surface water" coverage determination under the Flood Endorsement was not <u>necessary</u> to its judgment for the reasons explained by the majority at footnote 2 of the opinion. Specifically, the majority held that Fidelity was entitled to the full benefit of the drain overflow coverage under the Habitational Program Endorsement even if there were other contributing causes that might be excluded or, in the case of the Flood Endorsement's "surface water coverage," subject to a deductible. *Nova*, 726 F.3d at 37, n.2. Accordingly, finding "surface water" to be a covered cause of the loss – which the Court later did, *id*. at 40-41 – could not reduce the coverage that Fidelity <u>already had</u> for its losses <u>without any</u> <u>deductible</u> under the Habitational Program Amendatory Endorsement, *id*. at. 37, n.2. As the majority explained:

> There is nothing in the language of the Flood Coverage amendatory endorsement that has preclusive effect over any other claim for damage brought under any other term of the policy, including a claim brought on the basis of water damage resulting from drain overflow. . . . we most forcefully conclude that damage caused by drain overflow, even if indirectly caused or caused in a sequence[] with other causes, would be entitled to coverage as a result of the amendatory endorsement <u>without a</u> <u>deductible</u> (since only the Flood Coverage amendatory endorsement requires a deductible; the Amendatory Endorsement-Habitational Program does not).

4

*Id* (emphasis in original).

It is thus apparent that the *Nova* Court's later discussion of Fidelity's alternative argument for "surface water" coverage under the Flood Endorsement made no difference to the outcome of the case. It did not change the existence or amount of coverage Fidelity already had under the Habitational Program Endorsement. This is the very definition of "superfluous content" that creates no binding precedent. *Arcam*, 513 F.3d at 3 ("The result, along with those portions of the opinion necessary to the result, are binding, whereas dicta is not.").

It is similarly evident that the *Nova* Court's alternative "surface water" coverage determination under the Flood Endorsement was not <u>sufficient</u> to sustain the judgment because the result in the case would have been different if coverage had been based on the Flood Endorsement alone. In that event, Fidelity's recovery would have been reduced by the Flood Endorsement's $25,000 deductible. But the Court held otherwise, which proves that its judgment <u>did not</u> rest equally on its treatment of the two "Issues Presented." Rather, the ruling in Fidelity's favor on the first of the two issues – i.e., Fidelity's primary argument for coverage under the Habitational Program Endorsement – was the sole and exclusive basis on which the judgment for Fidelity <u>without any deductible</u> could have rested. *Nova*, 726 F.3d at 37, n.2.

*Nova* is thus unlike the two Supreme Court cases cited by Zurich, which involved judgments that rested equally on two alternative grounds, either one of which would have independently supported the judgments and thus both created binding precedent. *See* Zurich's Brief at 27-28 (citing *Massachusetts*, 333 U.S. at 622-23 ("Neither claim was either more or less essential to decision than the other, indeed decision upon both was necessary to a judgment favorable to Illinois . . . and the judgment rested as much upon the one determination as the other"); *Union Pac.,* 199 U.S. at 165-166 (decision on either of the alternative contractual and statutory grounds "was enough to sustain a decree in their favor" which meant there were "two grounds, upon either of which the judgment of the trial court can be rested")).

In seeking to sidestep this conclusion, Zurich misconstrues the penultimate paragraph of the *Nova* opinion in which the Court remanded to the District Court for reconsideration "in accordance with the strictures of this opinion." *See* Zurich Brief at 28 (citing *Nova*, 726 F.3d at 41). Zurich quotes only part of that paragraph – the Court's statement that Fidelity's losses "would have been covered by the [Flood] amendatory endorsement of the Policy as 'surface water.'" *Id* (underline emphasis added). And Zurich contends this statement was necessary to the judgment that the District Court was instructed to enter in Fidelity's favor. *Id*. Not so.

6

The full language of that paragraph makes clear that the actual judgment was based solely on the Court's rain limitation and drain overflow holdings, not its analysis of the Flood Endorsement, which was rendered moot by the fact that Fidelity had coverage under other policy provisions. *Nova*, 726 F.3d at 41 (reversing the District Court because "the evidence established as a matter of law that the damage to the interior of the Knowles' property was not 'caused by rain,' **and in any case would have been** covered by the amendatory endorsement of the Policy as 'surface water.'") (emphasis added). By using the words "and in any case" and "would have been", the *Nova* Court essentially labeled its own discussion of "surface water" coverage under the Flood Endorsement as obiter dicta, i.e., a passage of the decision that was unnecessary to the actual judgment.[1]

Finally, the *Nova* Court's dicta was not "carefully considered," at least not with respect to the very different issues and arguments raised by the parties in this appeal. The *Nova* Court did not address any of the cases from other jurisdictions that the parties to this appeal have cited in support of their

---

[1] Because the part of the *Nova* opinion on which Zurich and the District Court rely so heavily was dictum and not part of the judgment, and because it did not concern "the same legal question" presented here, *see* Section I.B, *infra*, the law of the circuit rule (Zurich Br. at 21-22) simply does not apply.

respective interpretations of "surface water," nor did it analyze how water landing directly on an enclosed roof dozens of feet above the ground could be considered water "on the surface of the earth" or "naturally spreading over the ground." No party in the *Nova* case asked the Court to consider these questions and it did not need to consider them to decide the case in Fidelity's favor. The *Nova* Court's statement that it saw "no reason to disturb the district court's finding" that the water on Fidelity's roof was "surface water," 726 F.3d at 40, was hardly the sort of carefully considered dicta that is entitled to great weight.

**B.**  ***Nova* Is Distinguishable Because the Coverage Questions Presented in that Case Were Fundamentally Different than the Questions Presented Here**

Zurich has argued that "the facts and operative policy language in *Nova* are indistinguishable from the facts and policy language at issue here." Zurich Br. at 13. This is a stretch, to say the least, given that the "operative policy language" upon which the *Nova* Court rested its judgment was a Habitational Program Amendatory Endorsement that has no analog in the Zurich Policy issued to MPT. *See* Section I.A, *supra*.

But even insofar as the definition of "Flood" in the Nova policy may be similar to the Flood definition in the Zurich Policy, the relevant rules of contract interpretation to be applied in construing that "Flood" definition (and

the undefined term "surface waters" used therein) were completely different in *Nova* than they are in this case. In *Nova*, finding the water on the roof to be "surface waters" <u>favored</u> coverage for Fidelity. That means that, under Massachusetts law, if "surface waters" <u>could</u> reasonably be construed to include ponded water on a roof, the Court was bound to do so. *See*, *e.g.*, *Hakim v. Mass. Insurers' Insolvency Fund*, 424 Mass. 275, 281-82, 675 N.E.2d 1161, 1165 (1997). But here, finding the water on the Norwood Hospital roofs to be "surface waters" would <u>reduce</u> the coverage available to MPT by tens of millions of dollars. Accordingly, in this case, Zurich must prove that no reasonable insured could construe the term "surface waters" (as defined by the SJC) as <u>not</u> including rainwater that collects on a parapet roof one or more stories above the ground without ever lying or flowing on the surface of the earth below. *Id*. <u>That question</u> did not arise in *Nova*; Zurich does not contend otherwise.

Instead, Zurich responds that "this argument might have merit only if *Nova* had found the term 'surface water' ambiguous." Zurich Br. at 23. According to Zurich, the *Nova* Court found the term "surface water" to be unambiguous and inclusive of ponded water on a roof. *Id*. But that is not what the Court held, nor was it asked to decide that question. The second of Fidelity's "Issues Presented" on appeal was <u>not</u> "whether ponded water on the

roof was surface water such that coverage existed under the Flood
Endorsement." The actual "Issue Presented" by Fidelity was:

> **Where the District Court also determined that the water that
> entered the building was 'surface water,'** and where the
> "FLOOD COVERAGE" amendatory endorsement afforded
> coverage for losses caused by "surface water," did the Court err
> in failing to rule that there was coverage under this provision of
> the policy?"

[A94-95 (emphasis added).]

As previously noted, Nova did not contest the District Court's *sua
sponte* finding that the water on the roof was "surface water," *Nova*, 726 F.3d
at 39; indeed, Nova expressly argued that the definition of "surface water"
was irrelevant to the appeal, A232. Accordingly, the parties in *Nova*
effectively stipulated that the District Court's *sua sponte* characterization of
the water on the roof as "surface water" should be assumed for purposes of
appeal. All the Court of Appeals was asked to decide is whether, under that
assumption, the Flood Endorsement would be another possible source of
coverage in addition to Fidelity's primary argument for coverage under the
Habitational Program Endorsement. The Court determined it "would have
been," 726 F.3d at 41; in other words, that the plain and unambiguous
language of the Flood Endorsement covered damage caused by "surface

10

water" (*assuming it was* "surface water").[2]  The Court did <u>not</u> hold that the meaning of "surface water" unambiguously includes ponded water on a roof.

It bears repeating that even insofar as the Court's decision that there was "no reason to disturb the district court's finding," *id*. at 40, represented its own conclusion that the Massachusetts definition of "surface water" *could* reasonably be construed to include ponded water on a roof, the Court most certainly *did not* find that is the only reasonable interpretation.  Whether reasonably intelligent persons might differ regarding the proper interpretation of "surface waters" is the question presented on this appeal, and contrary to Zurich's arguments, there is no binding precedent – either from *Nova* or from the SJC's decisions in *Boazova* and *Surabian* – that requires the Court to rule in Zurich's favor.

---

[2] *See Nova*, 726 F.3d at 40 ("It was error on the part of the district court **when it neither considered the language of the amendatory endorsement** in its denial of Fidelity's motion for summary judgment on the basis of its 'surface water' finding **nor assessed the significance of that endorsement to Fidelity's claim** when it was called to the court's attention in Fidelity's motion for reconsideration.") (emphasis added).

II.  **Nothing in the SJC's *Boazova* or *Surabian* Decisions Suggests the SJC Would Extend Its Definition of "Surface Water" to Include Rainwater Landing Directly on a Rooftop Without Ever Lying, Flowing or Spreading on the Surface of the Earth or Ground**

The parties agree that the SJC has given the term "surface waters" a fixed definition for purposes of property insurance policies. *See Boazova*, 968 N.E.2d at 392 (defining "surface waters" as waters "that lie or flow on the surface of the earth and naturally spread over the ground but do not form a part of a natural watercourse or lake."); *Surabian*, 971 N.E.2d at 271-72 (same). The question presented by this appeal is whether or not the words chosen by the SJC to define "surface waters" unambiguously include rainwater landing directly on a rooftop dozens of feet above the ground without ever lying, flowing or naturally spreading over the surface of the earth or the ground below. MPT says no – such water exhibits none of the SJC's defining characteristics of "surface waters." Zurich responds that MPT's position "cannot be squared with the reasoning in *Boazova*," Zurich Br. at 34, in which Zurich asserts the SJC found the term "surface waters" is unambiguous and inclusive of ponded rainwater landing on any artificial surface, *id.* at 12, 23-24, 40-41.

It is difficult to understand Zurich's argument that MPT's interpretation of "surface waters" cannot be squared with *Boazova* since MPT's interpretation of "surface waters" simply employs the words used by the SJC

to define that term in *Boazova*. At its core, Zurich's argument seems to be an attempt to modify the SJC's definition of "surface waters" *sub silentio* by arguing (erroneously) that the facts in *Boazova* and the cases cited therein suggest the SJC may have said one thing, but really meant another. *See* Zurich Brief at 34-37. The Court should reject this attempt and instead faithfully apply the SJC's definition of "surface waters" (as written) to the undisputed facts in the record.

### A.   *Boazova* and the Cases Cited Therein Do Not Support Zurich's Attempt to Read Out of the SJC's Definition the Requirement that "Surface Waters" Be on the "Surface of the Earth" or "Ground"

The parties here and the District Court have already agreed that the patio in *Boazova* and the parking lot in *Surabian* were both "on the surface of the earth" and "on the ground" such that no issue arose in either case concerning whether "surface water" also includes rainwater that lands and pools on surfaces above the surrounding ground, like a roof. *See* MPT Br. at 28-32, quoting from A787-788 and A821-822. In a footnote, Zurich attempts to defend the District Court's characterization of the patio in *Boazova* as "raised," but Zurich concedes that the patio was indeed level with the surrounding soil. Zurich Br. at 33, n.5. It is thus apparent that nothing like the question presented in this appeal was actually decided by the SJC in *Boazova* or *Surabian*.

13

In support of its contention that "surface waters" need not be at "ground-level," Zurich argues that the SJC's favorable citation in *Boazova* to two cases from other jurisdictions suggests that the SJC would so hold if it were confronted with a case like this one – i.e., top-down water infiltration resulting from rain landing directly on the building's roof. Zurich Brief at 34-37 (discussing *Cameron v. USAA Prop. & Cas. Ins. Co.*, 733 A.2d 965 (D.C. 1999) and *Crocker v. American Nat'l Gen. Ins. Co.*, 211 S.W.3d 928 (Tex. Ct. App. 2007)).[3]   But *Cameron* and *Crocker* also did not address facts even

_____

[3] Zurich also referred to *Bringhurst v. O'Donnell*, 14 Del. Ch. 225, 124 A. 795 (1924) and *Sherwood Real Estate and Inv. Co. v. Old Colony Ins. Co.*, 234 So.2d 445 (La. Ct. App. 1970), cases that were cited in *Cameron* and which Zurich contends support its position.  The relevant portion of the *Sherwood* opinion was subsequently held to be non-binding dicta, however, because the judgment in that case was based on other policy provisions (as in *Nova*, *see* Section I.A).  *Sherwood* has not been followed in Louisiana, where water accumulation on a roof does not constitute "surface water." *Cochran v. Travelers Ins. Co.*, 606 So.2d 22, 24 (La. Ct. App. 1992); *Louisiana Mid-Continental Oil & Gas Ass'n v. Peerless Ins. Co.,* No. CV 17-01098-BAJ-EWD, 2019 U.S. Dist. LEXIS 45648, at *6 (M.D. La. Mar. 19, 2019).

Regarding *Bringhurst*, Zurich misunderstands MPT's argument why that case is particularly distinguishable.  *See* Zurich Br. at 34, n. 7.  MPT's point is not that *Bringhurst* arose in a non-insurance context; it is that *Bringhurst* concerned an easement that would have been rendered meaningless if its reference to "surface water" was not understood as including water on the roof.  Unlike here, there was only one plausible interpretation of the term "surface water" in that easement.  *See* MPT Opening Br. at 43-44.

14

remotely similar to this case, and the SJC's citation to those cases provides no support for Zurich's position.

The SJC cited *Cameron* and *Crocker* for the uncontroversial proposition that the mere migration of rainwater across a man-made patio into the house did not change the water's character as "surface water." *Boazova*, 968 N.E.2d at 393. Zurich describes the patio at issue in *Cameron* as a "raised patio," Zurich Brief at 34, but there is no support for that assertion in the *Cameron* opinion itself. Both *Cameron* and *Crocker* (like *Boazova* and *Surabian*) involved water intrusion that occurred at the ground-level of the insured building, unlike the top-down water intrusion here. Notably, the insurer in *Cameron* conceded that damage to the second floor of the insureds' home that resulted from top-down water intrusion was <u>not</u> excluded as "surface water." *Cameron*, 733 A.2d at 966, n.1.

There is nothing about the SJC's citation to *Cameron* or *Crocker* that suggests the SJC would find standing rainwater collecting on a building's roof substantially above the ground to be "surface water." Indeed, one of the Pennsylvania cases cited by MPT made precisely that point in distinguishing *Cameron* from cases like this one where water infiltrates the building from above through its roof. *Union St. Furniture & Carpet, Inc. v. Peerless Indem.*

*Ins. Co.*, No. FSTCV085008699S, 2012 Conn. Super. LEXIS 2635, at *9-10 (Conn. Super. Ct. Oct. 23, 2012).[4]

Zurich argues that distinguishing between (1) water flowing over a patio and into the ground-level of a building, and (2) rainwater falling onto a building's roof and thereafter seeping into the building from above, would create a "height test" that is inconsistent with *Boazova* and would produce uncertainty. Zurich Br. at 36. Zurich also contends that rainwater landing on the hospital's roofs ceased to be rain when it landed, and therefore must have become surface water. *Id.* at 44-47. These arguments miss the mark.

Taking them in reverse order, it does not matter what nomenclature one uses to describe the rainwater that landed and accumulated on the hospital's roofs. Whether it is "rain," or just plain "water," as long it is not "surface water" (as defined by the SJC), the damage caused by that water is not subject

---

[4] "The court does not necessarily agree that water on a patio is water on the earth's surface, but such disagreement is not necessary to distinguish *Cameron* from this case where the claimed surface is a roof, deliberately built above the ground so as to protect area or space that also may be above, or off, the ground. The most common definition of surface water appears to locate the water on or very close to the earth's surface. See *Black's Law Dictionary* (9th ed. 2009). Mindful of the well accepted rules of interpretation of insurance contracts, the court rejects the strained interpretation of surface water offered by Peerless, and concludes that the phrase 'surface water' as it occurs in the Peerless policy does not include water collected on a roof."

to the Flood Sublimit.  If Zurich wishes to reduce MPT's recovery by operation of the Flood Sublimit, it is <u>Zurich's burden</u> to prove that the water on the hospital's roofs unambiguously falls within the scope of the SJC's definition of "surface water."  It is not MPT's burden to prove that the water was "rain" or something else.

Zurich's concerns about a "height test" are overblown.  Zurich cites no case where it has been difficult to distinguish between surface water intrusion at ground-level and top-down water intrusion through a building's upper floors; indeed, the *Crocker* and *Union St.* decisions demonstrate that such line-drawing is easy.  At bottom, the SJC has defined "surface waters" as waters that "lie or flow <u>on the surface of the earth</u> **and** naturally spread <u>over the ground</u>."  *Boazova*, 968 N.E.2d at 392 (emphasis added).  If the damage-causing water does not fit that description, it is not "surface water," plain and simple.  This is not a "hypertechnical" distinction, as Zurich argues.  *Id*. at 46.  It is a distinction required to be drawn by the SJC and by the Policy wording.  Nor is it a distinction that "ignores reality" or "common understanding."  *Id*.  Rather, it is Zurich's false equivalence between rainwater on a roof and water flowing over the ground that defies reality and common understanding, since – as illustrated below – one would not ordinarily say that something is "on the

17

surface of the earth" or "the ground" if it is instead on a roof dozens or hundreds of feet above the ground.



Photo of Norwood Hospital Lorusso Building and Ground-Level Flooding

From https://www.nbcboston.com/news/local/norwood-hospital-flooded-patients-evacuated/2150798/

### B. Rainwater Landing Directly on the Hospital's Roof Is Not "Surface Water" Because It Never "Naturally Spread Over the Ground" in a Diffused State Before Inundating the Roof

Zurich also seeks to do away with that part of the SJC's definition of "surface waters" that requires the water to "naturally spread over the ground" in a diffused state. *Boazova*, 968 N.E.2d at 392; Zurich Br. at 37-39. Zurich observes that the flow of the surface water in *Boazova* was impacted by a "cant" in the patio, and yet it remained "surface water" as it made its way into the insured's home. Similarly, Zurich notes that the surface water in *Surabian* remained "surface water" even though its flow into the insured's building was aided by a drain blockage in the parking lot. *Id.* Thus, according to Zurich,

the SJC's requirement that surface water "naturally spread over the ground" in a diffused state should not be taken literally. *Id.* Zurich cites *Cameron* and two other cases from outside Massachusetts in support of this contention.

What Zurich fails to appreciate, however, is that in each of the cases it cites – including *Boazova* and *Surabian* – the water at issue <u>did</u> flow and spread over the ground <u>before</u> encountering the insured's building (at ground-level) and causing damage. Not so here. What happened on the Norwood Hospital roofs is quite a different phenomenon than water flowing naturally over a ground-level patio and into a basement (*see Cameron* and *Capital Mortg. Sols., LLC v. Cin. Ins. Co.*, No. 21-cv-10873, 2023 U.S. Dist. LEXIS 90913 (E.D. Mich. May 24, 2023), or rainwater that landed on and spread across the ground before filling up window wells and entering the basement (*Smith v. Union Auto Indem. Co.*, 323 Ill. App. 3d 741, 752 N.E.2d 1261 (Ill. App. Ct. 2001)).

The facts in *Boazova*, *Surabian*, *Capital*, *Cameron* and *Smith* are akin to what happened on the ground-floor and basement of the Norwood Hospital – i.e., surface water accumulating on the ground outside (including on a paved parking lot) and then flowing into the building at ground-level. MPT agrees that is "Flood," both as defined by the Policy and as a matter of common sense. But the water accumulation on the hospital's roofs and resulting

damage to upper floors was not caused by surface water spreading across the ground and onto the roofs (indeed, that would be physically impossible since the roof surfaces are all dozens of feet above the ground). Rather, the water accumulation on the roofs was caused by rain landing directly thereon – an entirely different type of event than the Flooding that occurred on the ground floor.

Zurich is unable to identify <u>any</u> flow or spread of the water that accumulated on the hospital's roofs other than the eventual seepage of that water through the roofs' waterproofing membrane and then throughout the upper floors of the building. *See* Zurich's Br. at 39, 48 ("the surface water *did* travel from the exterior of the building into the interior"). But the fact that the water flowed or spread throughout the interior of the building <u>after</u> the roofs were inundated and damaged does not help Zurich. That is because the Policy states clearly that the condition of inundation must have been <u>caused by</u> "surface water," which means the water must exhibit the characteristics of "surface water" <u>before</u> it causes the inundation and damage, not after. *See* MPT Br. at 49-51. MPT does not dispute that the Norwood Hospital's parapet roofs became inundated, but the water that inundated those roofs was never "surface water," and thus, the damage to upper floors was not caused by "Flood."

**C.    *Boazova* and *Surabian* Did Not Hold That "Surface Waters" Is Unambiguous as Applied to the Facts Presented Here**

Zurich contends that the SJC held in *Boazova* and *Surabian* that the term "surface waters" is unambiguous as a matter of Massachusetts law and that it "plainly includes . . . rainwater on artificial surfaces, whether raised above ground level or not."  Zurich Br. at 12, 23-24, 40-41.  Zurich is wrong.

The SJC's statements in *Boazova* and *Surabian* regarding the absence of ambiguity were limited to the questions actually presented in those cases. In each case, the SJC's comments regarding the "unambiguous provisions in the policy" were directed at the anti-concurrent cause provision in the policies' "water exclusions."  *Boazova*, 968 N.E.2d at 390-95; *Surabian*, 971 N.E.2d at 272-74.   In *Boazova*, for example, the SJC held that "[a]n anticoncurrent cause provision in an insurance policy does not create an ambiguity" and thus applied the plain and unambiguous language of the "surface water" exclusion.  *Id*. at 394-95.

Regarding whether or not the water that flowed over the patio and into the insured's home was "surface water," that part of the SJC's opinion does not mention ambiguity or a lack thereof.  *Id*. at 393.  If it had, the issue would have been whether a reasonable insured would understand that "surface water" loses its character as such after flowing over a ground-level patio, an

21

issue that is not presented here. *Id.* The SJC did not decide or even address the question presented by this appeal – whether a reasonable insured could construe "surface water" as not including rainwater that lands directly on the insured building's roof without ever lying, flowing or spreading on the surface of the earth or the ground.

III.   **The Term "Surface Waters" – as Used in the Policy and Applied to the Facts Here – Is, at Best for Zurich, Ambiguous and Must Be Construed in MPT's Favor**

Given that neither the SJC nor this Court has ever addressed the questions presented here and found the term "surface water" unambiguous as applied to those questions, the analysis returns to the factors that must be considered in deciding whether there is more than one reasonable interpretation of "surface waters" under the circumstances presented. *See* MPT Br. at 35-57. As explained in MPT's opening brief, examination of these factors demonstrates that, at best for Zurich, reasonably intelligent persons might disagree as to whether "surface water," as defined by the SJC, includes ponded rainwater landing on a roof. *See Dorchester Mut. Ins. Co. v. Krusell*, 485 Mass. 431, 150 N.E.3d 731, 740 (2020). Accordingly, the term is ambiguous as applied here.

A.     **Dictionary Definitions and Case Law in Other Jurisdictions Do Not Support Zurich's Expansive Interpretation of "Surface Water"**

Zurich misunderstands how dictionary definitions can be helpful in deciding the question presented on this appeal.  Under no circumstances can dictionary definitions of "surface water" supplant the definition that the SJC already has given that term.  Rather, dictionary definitions of "surface water" may be useful to understanding whether the term – *as defined by the SJC* – is commonly understood as including waters that collect on surfaces other than "the ground" or the "surface of the earth."  Zurich cites not a single dictionary definition of "surface waters" that expressly includes rainwater falling onto the roof of a building.  To the contrary, most dictionary definitions of "surface waters" (like the SJC's definition) specifically require the water to be lying, flowing or spreading on "the ground" or the "surface of the earth."

Zurich's (and the District Court's) focus on the definition of the single word "surface" (unaccompanied by "waters") ignores all of the other terms in the SJC's definition of "surface waters."  Zurich Br. at 42-44.  The only "surface" that the SJC referred to in its definition of "surface waters" is the "surface <u>of the earth</u>."  If the SJC had meant to include water on *any* surface (including parapet roof surfaces) within the scope of its definition, wouldn't it instead have simply defined "surface waters" as waters "that lie or flow on

any surface"?  Surely it is not unreasonable to construe the words "on the surface of the earth" and "the ground" literally.  Even if it were also reasonable to construe "surface waters" more broadly to mean water that collects on any surface, as Zurich does, it does not follow that this would be the only reasonable interpretation.

Similarly, the varying interpretations of courts addressing whether "surface water" includes rainwater on a roof is strong evidence that the term "is susceptible of more than one meaning" and thus ambiguous.  *Krusell*, 150 N.E.3d at 740.  Zurich does not dispute that MPT's position is the majority view among those courts that have addressed this precise question.  *See* MPT Br. at 41-42; Zurich Br. at 41, n.8.  The fact that some courts have also ruled in favor of Zurich's position suggests only that "reasonably intelligent persons could differ as to which meaning is the proper one", which means the term must be construed in favor of coverage.  *Krusell*, 150 N.E.3d at 740.

**B.     Clues from the Rest of the Policy Wording Also Support the Reasonableness of MPT's Understanding of "Surface Waters"**

Notably, Zurich does not even respond to MPT's arguments based on *noscitur a sociis* and *ejusdem generis*, MPT Br. at 48-52, other than to argue, in a footnote, that these arguments "can be ignored completely," Zurich Br. at 46, n.10.  Zurich similarly urges this Court to ignore the fact that Zurich itself

distinguishes between "top down" water damage from a roof and "surface water" damage from water intrusion on the ground. *Id*. And finally, Zurich simply declines to answer the question posed in MPT's Brief – "[i]f accumulating water behind an ice dam is not "surface waters," then how was the accumulating water on the Norwood Hospital roofs "surface waters"? Zurich's unwillingness to engage on these points shows the weakness of its position, and the lack of any response to MPT's arguments demonstrates that MPT's position is at least reasonable.

Zurich at least *attempts* to rebut MPT's arguments that the District Court erred in relying on the Policy's reference to water "on or under the ground" in a separate section of the Flood definition addressing inundation caused by mudflow or mudslides. Zurich Br. at 49-50. But Zurich seems to misunderstand what MPT is arguing, or at least it does not confront MPT's arguments head-on. The function of § 7.23.02's reference to "accumulation of water on or under the ground" is to describe the one and only cause of a mudflow or mudslide that will make it qualify as Flood (if it results in a condition of inundation). If mudflow or mudslide is caused by any other phenomenon – such as earthquakes, volcanic activity or human disturbance – it cannot result in Flood, under the Policy's definition. The purpose of this wording is thus limited to the specific phenomena described in § 7.23.02

25

(mudflow or mudslide) and has no bearing on whether the term "surface water," as used in § 7.23.01, should be construed as including both water "on the ground" and "above the ground," as Zurich contends.

Notably, Zurich does not disagree that it would have been redundant for § 7.23.01 to refer to "surface waters on the ground" given that the SJC already has defined "surface waters" as being "on the ground." If Zurich had intended to include accumulation of rainwater on surfaces above the ground in § 7.23.01 as a possible cause of Flood, it should have said so in "clear and unmistakable language." *See*, *e.g.*, *PTC, Inc. v. Charter Oak Fire Ins. Co.*, 123 F. Supp. 3d 206, 211-12 (D. Mass. 2015). *See also Vermont Mut. Ins. Co. v. Zamsky*, 732 F.3d 37, 44 (1st Cir. 2013) (refusing to "countenance the insurer's revisionist attempt to make a policy exclusion sweep more broadly than its language dictates."). Or Zurich could have separately defined "surface waters" in the Policy so as to give that term a different meaning than the one provided by the SJC in *DeSanctis*, *Boazova* and *Surabian*. Instead, Zurich used the un-defined term "surface waters," which the SJC has stated refers to water "on the ground." It is not unreasonable for a policyholder to read this term literally – i.e., as excluding rainwater that collects on surfaces above the ground, such as a roof.

26

Finally, Zurich urges the Court to not even consider the potential ramifications on the insurance marketplace of a ruling that rainwater landing directly on a building's roof is "surface water" and/or "Flood." Zurich Br. at 50. As explained in MPT's opening brief, and in the amicus curiae brief of United Policyholders, the unintended consequences of such a ruling could be dramatic and would come at a time when consumers are already withdrawing from the property insurance market.[5] If Zurich's position is sustained, are homeowners and businesses all over the country – even in areas that have never been considered flood zones – now in need of Flood insurance to protect themselves against the risk of loss caused by rainfall directly onto their buildings? Zurich disregards these concerns as "speculative," *id.*, but it is not at all clear why this result would not ineluctably follow from the ruling Zurich seeks.

## IV.    In the Alternative, This Court Should Certify to the SJC the Correctness of the District Court's Ruling

Zurich's principal response to the arguments in MPT's opening brief is that "there is controlling precedent and the answer is clear." *Id.* at 51. But that contention is seriously undermined by the fact that this Court and the

---

[5] *See*, *e.g.*, https://www.wsj.com/personal-finance/americans-are-bailing-on-their-home-insurance-e3395515.

27

District Court already have agreed that the controlling question of law presented by this appeal is one "as to which there is substantial ground for difference of opinion," such that interlocutory review under 28 U.S.C. § 1292(b) is appropriate. If the Court does not reverse the District Court's Order and rule in MPT's favor, then MPT continues to believe that the next best approach would be to seek clarity from the SJC regarding the correct application of the Massachusetts definition of "surface water" as applied to the circumstances of this case by developing certified questions pursuant to SJC Rule 1:03.

## CONCLUSION

For all the foregoing reasons, this Court should reverse the District Court's Order granting Zurich's motion for partial summary judgment and denying MPT's cross-motion and enter an Order declaring that the Policy's Flood sublimit does not reduce MPT's coverage for property damage or other losses caused by water intrusion from the roof, upper-floor courtyards or other above-ground building envelope sources. If the Court does not so rule, MPT requests in the alternative that the court certify the questions presented herein to the Supreme Judicial Court of Massachusetts pursuant to SJC Rule 1:03.

RESPECTFULLY SUBMITTED,

Defendant-Appellant
Medical Properties Trust, Inc.,
By its attorneys,


*/s/ Martin C. Pentz*
Martin C. Pentz (BBO # 394050)
Creighton K. Page (BBO # 674640)
Laura D. Gradel (BBO # 692315)
Natalie F. Panariello (BBO # 707579)
Foley Hoag LLP
Seaport West, 155 Seaport Boulevard
Boston, Massachusetts 02210-2600
Telephone:  617 832 1000
Facsimile:  617 832 7000
mpentz@foleyhoag.com
cpage@foleyhoag.com
lgradel@foleyhoag.com
npanariello@foleyhoag.com

-and-

Of counsel:

Dale Jefferson (*pro hac vice*)
David D. Disiere (*pro hac vice*)
Martin, Disiere, Jefferson & Wisdom
808 Travis, Suite 1100
Houston, TX 77002
Telephone: 713 632 1717
jefferson@mdjwlaw.com
disiere@mdjwlaw.com


Dated: September 21, 2023

## CERTIFICATE OF COMPLIANCE

This brief complies with the requirements of Fed. R. App. P. 32(a)(5), 32(a)(6), and 32(a)(7)(b) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14 point Times New Roman, this brief is set in plain, Roman style and italicizes case names, and contains 6,489 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f).

*/s/ Martin C. Pentz*
Martin C. Pentz (BBO # 394050)

## <u>CERTIFICATE OF SERVICE</u>

I, Martin C. Pentz, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants by mail and/or email on September 21, 2023 at the addresses listed below.

David D. Disiere
Martin Disiere Jefferson & Wisdom LLP
808 Travis St, Suite 1100
Houston, TX 77002
disiere@mdjwlaw.com

*/s/ Martin C. Pentz*
Martin C. Pentz