# United States Court of Appeals
# For the First Circuit

No. 23-1167

ZURICH AMERICAN INSURANCE COMPANY,
Plaintiff – Appellee,

v.

MEDICAL PROPERTIES TRUST, INC.,
Defendant – Appellant.

No. 23-1180

STEWARD HEALTH CARE SYSTEM, LLC,
Plaintiff – Appellant,

v.

AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY; ZURICH AMERICAN INSURANCE COMPANY,
Defendants – Appellees.

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS (PATTI B. SARIS, J.)

**UNITED POLICYHOLDERS' REPLY IN SUPPPORT OF MOTION FOR LEAVE TO FILE BRIEF OF *AMICUS CURIAE* IN SUPPORT OF DEFENDANT-APPELLANT MEDICAL PROPERTIES TRUST, INC., AND REVERSAL**

Michael S. Levine
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 955-1500
mlevine@HuntonAK.com

Nicholas D. Stellakis
HUNTON ANDREWS KURTH LLP
60 State Street, Suite 2400
Boston, Massachusetts 02109
(617) 648-2800
nstellakis@HuntonAK.com

Dated: June 9, 2023

# **TABLE OF CONTENTS**

I.  UP PERFORMS THE ROLE OF A TRUE AMICUS CURIAE WITH A UNIQUE PERSPECTIVE THAT ASSISTS THE COURT. .................................4

II.  UP'S ARGUMENT IS RELEVANT. ............................................................7

III. THE INSURERS' REMAINING ARGUMENTS MISS THE MARK. .........8

CONCLUSION ................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AC Ocean Walk, LLC v. Am. Guarantee & Liab. Ins. Co.*,
   No. A-1824-21, 2022 WL 2254864 (N.J. Super. Ct. App. Div. June 23, 2022) ........................ 8

*Brunswick Panini's, LLC v. Zurich Am. Ins. Co.*,
   No. 21-3222, 2022 WL 17830725 (6th Cir. Dec. 21, 2022) ........................ 8

*Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*,
   20 F.4th 303 (7th Cir. 2021) ........................ 8

*Lefebure v. D'Aquilla*,
   15 F.4th 670 (5th Cir. 2021) ........................ 6

*Massachusetts Food Ass'n v. Massachusetts Alcoholic Beverages Control Comm'n*,
   197 F.3d 560 (1st Cir. 1999) ........................ 5

*Miller-Wohl Co. v. Comm'r of Lab. & Indus. State of Mont.*,
   694 F.2d 203 (9th Cir. 1982) ........................ 5

*Neonatology Assocs., P.A. v. Comm'r*,
   293 F.3d 128 (3d Cir. 2002) (Alito, J.) ........................ 10

*The Protector v. Geering*, 145 Eng. Rep. 394 (K.B. 1686) ........................ 6

*Puentes v. Wells Fargo Home Mortgage, Inc.*,
   72 Cal. Rptr. 3d 903 (2008) ........................ 10

*Strasser v. Doorley*,
   432 F.2d 567 (1st Cir. 1970) ........................ 6

*Washington All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*,
   518 F. Supp. 3d 448 (D.D.C. 2021), *aff'd*, 50 F.4th 164 (D.C. Cir. 2022), *cert. filed* (2023) ........................ 10

**Other Authorities**

Fed. R. App. P. 27(a)(4) ........................ 4

Jean-Claude André & Sarah Erickson André, Federal Appeals: Jurisdiction and Practice § 12:20 (2023 ed.) ........................ 7

Luther T. Munford, When Does the Curiae Need An Amicus?, 1 J. App. Prac. & Process 279 (1999 ........................ 9

United Policyholders ("UP") files this brief reply in support of its motion for leave to file an amicus brief in support of Defendant-Appellant Medical Properties Trust, Inc. ("MPT") and reversal of the decision below. This reply is authorized by Fed. R. App. P. 27(a)(4) and is necessary to respond to the opposition that the Appellee insurers ("Insurers") filed.

This case presents the question whether rainwater on a roof one or more stories aboveground qualifies as "surface water." MPT Br. at 1. Zurich's $750 million property policy covers damage from a "Flood," but sublimits this flood coverage to $100 million. *Id*. at 3-4. Zurich's policy defines "Flood," in part, as "[t]he unusual and rapid accumulation or runoff of surface waters, waves, tides, tidal waves, tsunami, the release of water, the rising, overflowing or breaking of boundaries of nature or man-made bodies of water; or the spray there from all whether driven by wind or not." *Id*. Seeking to cabin its liability to the sub-limited flood coverage, Zurich asserts that rain seeping through a roof is a "Flood" because it constitutes "surface waters." ADD-4. It reaches this conclusion because, it says, the roof is a "surface." Thus, in Zurich's view, rainwater is a "Flood" so long as it first lands on a "surface," even if it never touches the ground before entering the building—an argument that stands to nullify hundreds of millions of dollars in insurance coverage the policyholder here (and others similarly situated) bought.

3

UP, from its perspective representing policyholders across the country, challenges this position. Fulfilling the classic role as an amicus curiae, UP, through its brief, demonstrates why the Insurers are wrong. It traces the historical development of Flood coverage and demonstrates that flood risk is tied to proximity to bodies of water and other factors calculating the likelihood that such waters will enter a building from the surface of the earth. Flood risk is not measured by roof type. Rainwater entering a building from above is not "surface water" within the reasonable interpretation of that term.

UP's brief is proper, and this Court should consider its arguments.

## I. UP Performs the Role of a True Amicus Curiae with a Unique Perspective That Assists the Court.

UP seeks to perform the role of a true amicus curiae by providing a perspective that might otherwise escape consideration. *Miller-Wohl Co. v. Comm'r of Lab. & Indus. State of Mont.*, 694 F.2d 203, 204 (9th Cir. 1982) (classic role of amicus curiae is "assisting in a case of general public interest, supplementing the efforts of counsel, and drawing the court's attention to law that escaped consideration"). "[A] court is usually delighted to hear additional arguments from able amici that will help the court toward right answers." *Massachusetts Food Ass'n v. Massachusetts Alcoholic Beverages Control Comm'n*, 197 F.3d 560, 567 (1st Cir. 1999). "[C]ourts should welcome amicus briefs for one simple reason: '[I]t is for the honour of a court of justice to avoid error in their judgments.'"

*Lefebure v. D'Aquilla*, 15 F.4th 670, 675 (5th Cir. 2021), quoting *The Protector v. Geering*, 145 Eng. Rep. 394 (K.B. 1686).[1]

UP's brief fulfills this classic role. Its brief places this case within the wider context of the development of flood insurance in this country and the way insurers rate flood risk. UP Amicus Br. at 3-4. It describes the federal government's role as the primary provider of flood insurance for the last 60 years, after private insurers exited the market, and the development of the National Flood Insurance Program. *Id*. The Federal Emergency Management Agency ("FEMA") developed nationwide flood maps ("FIRMS") that depict an area's flood risk and flood plain, establishing the premium for flood insurance in that area. *Id*. at 5. Private insurers use FIRMS data to assess risk and establish premiums. *Id*. A number of factors are used to assess that flood risk—proximity to bodies of water, elevation, and some building properties such as building material, foundation type, first-floor height, number of floors, construction type, flood openings, and whether machinery is located on the ground floor. *Id*. at 5-6. But a property's roof type is *not* considered because surface-waters do not come in from the roof. *Id*. at 6.

---

[1] The Insurers' reliance on statements in *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970), is misplaced. Those comments related to consideration of amicus briefs by *district courts*. Regardless of whether or not the comments still reflect the state of the law today, they are not relevant to consideration of amicus briefs *on appeal*. In contrast to district courts, *this Court* by its very nature considers the broader implications of an opinion and how it may impact other cases.

From this, UP shows that the historical development of flood insurance and flood-risk ratings contradict the Insurers' attempt to redefine "surface waters" as water on any surface. *Id*. at 7. UP then demonstrates that this is entirely supported by the policy language of the specific policy at issue here and MPT's reasonable expectations as a policyholder. *Id*. at 7-10.

This fits well within the purview of amicus briefs that are routinely filed and accepted by this Court. It was timely filed, well-reasoned, and adds additional analysis not found in MPT's brief. Appellate courts, including this Court, freely grant leave to file amicus briefs in these circumstances, *even in the face of opposition*. Jean-Claude André & Sarah Erickson André, Federal Appeals: Jurisdiction and Practice § 12:20 (2023 ed.).

UP offers a unique perspective different from the parties, including MPT. Through its post-disaster work throughout the East Coast, UP regularly sees insurer attempts to undermine the reasonable expectations of policyholders—including individual homeowners—by trying to stretch flood exclusions to cover falling rain. UP has a significant interest in combating these industry attempts to make flood exclusions into "any water" exclusions.[2]

---

[2] UP notes as well the irony in the Insurers' argument that, because UP represents policyholders, its perspective is identical to MPT. Both of the Insurers regularly benefit from amicus participation on their behalf by groups that represent insurers, such as the American Property Casualty Insurance Association. *See, e.g.*,

*— footnote cont'd —*

6

## II. UP's Argument Is Relevant.

UP's argument is plainly relevant to the issues in this case. The Insurers' assertion otherwise illustrates exactly why their entire position is unpersuasive.

UP's brief, as noted, places the treatment of surface waters into historical context, drawing on the development of the National Flood Insurance Program after private insurers fled the market. The Insurers say that this has no bearing whatsoever because the Zurich policy at issue here was not written as part of the National Flood Insurance Program and not governed by those regulations. Opp. at 5-6. UP never said the Zurich policy was directly governed by those regulations. But UP's arguments are still relevant for the following reasons. As argued in the brief, FEMA rates flood risk based on proximity to bodies of water. This nexus—of the rating of flood risk and the proximity to bodies of water—illustrates that it is water from those bodies, not water on the roof, that defines the flood risk. Although Zurich may not have written the policy in this case as part of the National Flood Insurance Program, the risk of flood is the same. Thus, the way FEMA and the National Flood Insurance Program rate flood risk is emblematic of the way private insurers rate the same risk. In fact, Zurich's policy here expressly references the

---

*Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303 (7th Cir. 2021); *Brunswick Panini's, LLC v. Zurich Am. Ins. Co.*, No. 21-3222, 2022 WL 17830725, at *1 (6th Cir. Dec. 21, 2022); *AC Ocean Walk, LLC v. Am. Guarantee & Liab. Ins. Co.*, No. A-1824-21, 2022 WL 2254864 (N.J. Super. Ct. App. Div. June 23, 2022).

FEMA ratings and has specific sub-limits for certain FEMA-rated areas.[3] Insurers, including Zurich, rely, at least in part, on the federal government's rating of flood risk.

The Insurers' interpretation of "surface waters" could therefore have far-reaching, negative impacts in the law of property insurance if endorsed by the Court. UP, as amicus, wishes to bring these to this Court's attention.

### III. The Insurers' Remaining Arguments Miss the Mark.

The Insurers advance a hodgepodge of other arguments throughout their opposition. None has any merit.

The Insurers say that the amicus brief should be rejected because MPT is "represented by able counsel." Opp. at 3. That is not a reason to reject an amicus brief.

> Even when a party is very well represented, an amicus may provide important assistance to the court. "Some amicus briefs collect background or factual references that merit judicial notice. Some friends of the court are entities with particular expertise not possessed by any party to the case. Others argue points deemed too far-reaching for emphasis by a party intent on winning a particular case. Still others explain the impact a potential holding might have on an industry or other group." Luther T. Munford, When Does the Curiae Need An Amicus?, 1 J. App. Prac. & Process 279 (1999). Accordingly, denying motions for leave to file an amicus brief whenever the party

---

[3] E.g., A-635 (Zurich Policy § 7.37) (defining Moderate Flood Hazard Area as an area defined by FEMA and "shown on the FIRM per FEMA"), A-637 (§ 7.61) (defining Special Flood Hazard Area as area defined by FEMA), A-584 (declarations).

> supported is adequately represented would in some instances deprive the court of valuable assistance.

*Neonatology Assocs., P.A. v. Comm'r*, 293 F.3d 128, 132 (3d Cir. 2002) (Alito, J.).

They next say that UP improperly presents publicly available facts. However, this is precisely the sort of function amici often serve on appeal. An amicus brief is appropriate where it will assist the judges by presenting "ideas, arguments, theories, insights, facts[,] or data" not found in the parties' briefs." *Washington All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 518 F. Supp. 3d 448, 453 n.2 (D.D.C. 2021), *aff'd*, 50 F.4th 164 (D.C. Cir. 2022), *cert. filed* (2023). "[I]t is not unusual for an amicus curiae brief to include factual material that is outside the record." *Puentes v. Wells Fargo Home Mortgage, Inc.*, 72 Cal. Rptr. 3d 903, 911 (2008). UP quotes and cites publicly available material published by FEMA, academic sources, and Zurich itself, which is exactly the historical and contextual argument that amici routinely bring before courts of appeals.

The Insurers complain, inconsistently, that UP's brief "merely duplicates" but also "extends" MPT's arguments. Opp. Br. at 3. As described above, UP's argument is not duplicative. Rather, UP brings to the Court's attention the broader context of the issues presented. This is the proper role of an amicus; there is no rule of law that forbids an amicus to build on a party's argument.

That UP's brief fits well within the contours of amicus advocacy is underscored by the fact that the Insurers have benefitted from such advocacy in the

9

past. As noted above (see n.2), the Insurers have been the beneficiaries of amicus advocacy. When the brief suited them, they lodged no complaint that the brief was unnecessary because they were already well represented, or because the amicus brief built on their arguments, or because the amicus brief presented publicly available data, or because the amicus brief pulled back the lens and showed the court a broader perspective. This reveals their present complaint for what it is: the Insurers simply disagree with UP's argument. That is all the more reason for the Court to consider UP's brief, not reject it out of hand as the Insurers propose.

## CONCLUSION

United Policyholders' motion for leave to file its amicus brief should be granted.

                              Respectfully submitted,

                              */s/ Nicholas D. Stellakis*
                              Nicholas D. Stellakis (CA1# 1139768)
                              HUNTON ANDREWS KURTH LLP
                              60 State Street, Suite 2400
                              Boston, Massachusetts 02109
                              (617) 648-2800
                              nstellakis@HuntonAK.com

                              Michael S. Levine (CA1# 1198107)
                              HUNTON ANDREWS KURTH LLP
                              2200 Pennsylvania Avenue, NW
                              Washington, DC 20037
                              (202) 955-1500
                              mlevine@HuntonAK.com

                              *Counsel for Amicus Curiae, United Policyholders*

Dated: June 9, 2023

## CERTIFICATE OF COMPLIANCE

I hereby certify that this reply complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because

(1) this reply contains 1,943 words excluding the parts of the reply exempted by Fed. R. App. 32(f); and

(2) this reply complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this reply has been prepared in 14 point proportionally spaced using Times New Roman font.

*/s/ Nicholas D. Stellakis*
Nicholas D. Stellakis

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of June, 2023, this document was filed through the Electronic Case Filing system, and that copies will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

*/s/ Nicholas D. Stellakis*
Nicholas D. Stellakis

099997.0007737 DMS 302541822v4